UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NICHOLAS BELLEZZA,

    Plaintiff,

v.                            Case No. 8:18-cv-232-T-33JSS

LM GENERAL INSURANCE
COMPANY,

    Defendant.
_____/

**ORDER**

This cause comes before the Court sua sponte. For the reasons that follow, the Court remands this action to state court, pursuant to 28 U.S.C. § 1447(c), because this Court lacks subject matter jurisdiction.

**I.  Discussion**

On February 4, 2016, Nicholas Bellezza, a twenty-eight-year-old man, was injured when he was driving in the parking garage of Whole Foods grocery store in Sarasota, Florida. (Doc. # 1-1 at 55). Tortfeasor Joshua L. Barbour "accelerated quickly from a parking space and struck the rear passenger door of Mr. Bellezza's car." (Id.). At the time of the accident, Bellezza was covered by an insurance policy issued by Defendant LM General Insurance Company, with a Policy Number AOS-258-325272-4059. (Doc. # 2 at ¶

10). The "declarations page for the insurance policy at issue in this case . . . shows uninsured motorist limits of $250,000." (Doc. # 1 at ¶ 12).

Shortly after the accident, on February 15, 2016, Bellezza was seen by Dr. Lars Eric Larson for an evaluation and treatment of the injuries - specifically neck and back pain. (Doc. # 1-1 at 55). A cervical spine x-ray performed on February 18, 2016, revealed "mild disc space narrowing at C5 . . . Prominent left sided transverse process at C7 . . . [and] moderate restricted range of motion with no anterior vertebral offset." (Id.). The x-ray indicted that Bellezza may be suffering from "muscle spasm." (Id. at 56). An MRI of the spine on May 19, 2016, demonstrated bulging and herniated discs as well as spurring and encroachment. (Id.).

On September 14, 2016, Bellezza presented himself to Dr. Larry Fishman at Florida Surgery Consultants for complaints of "neck pain as well as upper extremity tingling." (Id.). Dr. Fishman recommended a "decompression" but Bellezza has not undergone any of the procedures recommended. Thereafter, on October 3, 2016, Bellezza presented himself to Larson Natural Health Center

and "chiropractic, physical therapy, and manual therapy techniques" were recommended. (Id. at 57).

On December 19, 2016, Bellezza's counsel sent a letter to Defendant LM General Insurance Company demanding a settlement in the amount of the policy limits – $250,000.00 - and explaining that Bellezza's medical bills then totaled $8,368.66. (Id.). The demand letter also described projected future damages and loss of the enjoyment of life, among other topics. (Id.).

LM General Insurance did not tender the policy limits and on December 29, 2017, Bellezza filed a two-count state court complaint against LM General Insurance. (Doc. # 2). In count one, Bellezza brings a claim for Uninsured/Underinsured Motorist Benefits and, in count two, Bellezza brings a claim for "First Party Insurance Bad Faith LM General Insurance Company - to be Abated until Resolution of Count I." (Doc. # 2 at 4). With respect to Bellezza's injuries, the Complaint alleges: "Bellezza suffered bodily injuries, resulting pain and suffering then, now and in the future; disability; disfigurement; loss of capacity for the enjoyment of life; expense for past and future medical including but not limited to

expenses of hospitalization and chiropractic care and treatment; loss of past, present and future wages; loss of ability to earn income; and or aggravation of a pre-existing condition. The losses are permanent in nature and or continuing, and the Plaintiff will suffer these losses in the future." (Doc. # 2 at ¶ 13).

On January 26, 2018, LM General Insurance timely removed the case to this Court on the basis of complete diversity of citizenship. (Doc. # 1). LM General Insurance is an Illinois Corporation with its principal place of business in Boston, Massachusetts. (Doc. # 1 at ¶ 9). Bellezza is a citizen of Florida. (Id. at ¶ 8).

As to the amount in controversy, LM General Insurance highlights that the relevant insurance policy's limits are $250,000, that Bellezza's demand letter sought the full policy limits, and that Bellezza's Complaint described allegedly disabling injuries. (Doc. # 1).

## II. **Jurisdictional Analysis**

When jurisdiction is premised upon diversity of citizenship, 28 U.S.C. § 1332(a) requires, among other things, that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." "If the

jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001). Further, if "damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence." Lowery v. Ala. Power Co., 483 F.3d 1184, 1208 (11th Cir. 2007).

Bellezza does not make a specified claim for damages. (Doc. # 2 at ¶ 1) (generally alleging damages exceeding $15,000). Upon review, the demand letter, while describing potentially serious injuries, does not provide a basis for determining that the amount in controversy likely exceeds the jurisdictional threshold of $75,000.00. See Standridge v. Wal-Mart Stores, 945 F. Supp. 252, 256 (N.D. Ga. 1996)(holding that a pre-suit demand letter was "nothing more than posturing by plaintiff's counsel for settlement purposes and cannot be considered a reliable indicator of the damages plaintiff is seeking"). And, a demand to tender policy limits does not automatically establish that the amount-in-controversy requirement has been satisfied. See Martins v. Empire Indem. Ins. Co., No. 08-60004-CIV, 2008

5

WL 783762, at *2 (S.D. Fla. Mar. 21, 2008) ("In determining the amount in controversy in the insurance context, numerous courts have held that it is the value of the claim, not the value of the underlying policy, that determines the amount in controversy.").

The Court is aware that "district courts are permitted to make reasonable deductions and reasonable inferences and need not suspend reality or shelve common sense in determining whether the face of a complaint establishes the jurisdictional amount." Keogh v. Clarke Envtl. Mosquito Mgmt., Inc., No. 8:12-cv-2874-T-30EAJ, 2013 U.S. Dist. LEXIS 20282, at *4-5 (M.D. Fla. Jan. 17, 2013)(internal citations omitted). But, overall, the record is devoid of evidence to suggest that Bellezza's damages from this parking lot incident exceed the $75,000.00 amount in controversy threshold. The record contains a summary of Bellezza's relevant medical records from two physicians regarding Bellezza's injuries. One doctor recommends surgery and another recommends chiropractic care. But, at the time of removal, Bellezza's medical bills only totaled $8,368.66. (Doc. # 1-1 at 57).

The Court recognizes that Bellezza has listed the following categories of damages in his Complaint: "bodily

injuries, resulting pain and suffering then, now and in the future; disability; disfigurement; loss of capacity for the enjoyment of life; expense for past and future medical including but not limited to expenses of hospitalization and chiropractic care and treatment; loss of past, present and future wages; loss of ability to earn income; and or aggravation of a pre-existing condition." (Doc. # 2 at ¶ 13). However, the Court has not been provided with sufficiently specific information about these broad categories of damages to find that the amount in controversy has been met. And, Bellezza has described these categories of damages in such a vague and inexact manner that the Court would indeed be required to engage in rank speculation to ascribe any monetary value to these damages.

For instance, Bellezza seeks redress for lost wages, but does not provide any earnings records or state the nature of his employment. Likewise, Bellezza seeks redress for aggravation of a preexisting condition, but does not state the manner in which such preexisting condition has been exacerbated. Also, he claims to suffer from a "disability," and other damages, yet the file before the Court lacks information (beyond nebulous generalities) to support these allegations. See Robinson v. Peck, No. 1:14-

7

cv-1628-WSD, 2014 U.S. Dist. LEXIS 159198, at *11-12 (N.D. Ga. Nov. 12, 2014)(granting motion to remand in slip and fall action where plaintiff "allege[d] a generic scattershot list of unspecified damages," which included personal injury, pain and suffering, mental anguish, loss of the capacity for the enjoyment of life, impaired ability to labor, loss of earning capacity, incidental expenses, expenses for medical treatment, future medical expenses and permanent injury).

Overall, the record is devoid of evidence to suggest that Bellezza's damages from this accident exceed the $75,000 amount in controversy threshold. Compare Kilmer v. Stryker Corp., No. 5:14-cv-456-Oc-34PRL, 2014 U.S. Dist. LEXIS 152072, at *8-10 (M.D. Fla. Oct. 27, 2014)(denying motion to remand and finding that the jurisdictional threshold was satisfied when past medical expenses totaled $72,792.93, and the record showed that plaintiff experienced pain and suffering associated with a failed knee replacement after the accident in question).

And, this Court will not consider any claim for bad faith claims handling at the removal stage. At the time of removal, that claim is abated, unripe, and not subject to consideration in the Court's calculations for the amount in

controversy. In Symonette v. MGA Ins. Co., No. 12-cv-21428, 2012 WL 12943077 (S.D. Fla. Oct. 3, 2012), the court explained: "a claim for bad faith . . . does not accrue until the underlying first-party action for insurance benefits against the insurer has been resolved in favor of the insured [and] a bad faith cause of action cannot exist absent a determination that the insurer is liable on the policy." Id. at *1. And, "at the time of removal," a plaintiff's "bad faith claim [is] not ripe and [is] thus not properly before the Court" if the first-party action has not yet been resolved in favor of the insured. Id.

In a case such as this, where "plaintiff makes an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement." Roe v. Michelin N. Am. Inc., 613 F.3d 1058, 1061 (11th Cir. 2010). As explained above, LM General Insurance falls short of meeting this burden. The Court, finding that it lacks subject matter jurisdiction, remands this case to state court.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

The Clerk is directed to **REMAND** this case to state

9

court pursuant to 28 U.S.C. § 1447(c) because this Court lacks subject matter jurisdiction. After remand has been effected, the Clerk shall **CLOSE THE CASE**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 31st day of January, 2018.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE